CHARLES M. WORTHLEY AND HELEN H. WORTHLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Worthley v. Commissioner
Docket No. 28762-86.
United States Tax Court
T.C. Memo 1988-262; 1988 Tax Ct. Memo LEXIS 288; 55 T.C.M. (CCH) 1088; T.C.M. (RIA) 88262; June 20, 1988
*288 Dennis L. Marvin, for the petitioners. Milton J. Carter, Jr., for the respondent. KORNER
MEMORANDUM FINDINGS OF FACT AND OPINION KORNER, Judge:[1] Respondent determined a deficiency in petitioners' 1982 Federal income tax and additions to tax as follows: Additions to Tax
Deficiency
Sec. 6653(a)(1) [2]
Sec. 6653(a)(2)
$ 16,021.80
$ 801.00
*
The issues for decision are whether petitioners are liable for tax on $ 42,751 paid for services rendered by petitioner Charles M. Worthley, and whether petitioners are liable for the additions to tax that respondent determined. Petitioners argue that the $ 42,751 is properly taxable to a corporation owned by Charles M. Worthley -- Worthley Enterprises, Inc. FINDINGS OF FACT *289 This case was submitted for decision on fully stipulated facts pursuant to Rule 122. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference. [3]
Petitioners were residents of Florida when they filed their petition herein. They filed a joint Federal income tax return for 1982. On February 21, 1980, Mr. Per Risberg, the General Manager of Saab-Scania, a Swedish corporation, sent petitioner Charles M. Worthley ("petitioner") a letter. The letter confirmed that petitioner had been offered the position of president and chief executive officer of Saab-Totem, Inc. ("Saab-Totem"), a Saab-Scania subsidiary located in Seattle, Washington. The letter indicated that petitioner was to serve in that capacity for a minimum of two years from March 31, 1980, and that the terms of the agreement would be effective until terminated *290 by one of the parties or by mutual agreement. Petitioner signified his acceptance of the terms of the letter by signing it on March 10, 1980. On February 3, 1981, Risberg wrote petitioner another letter. The letter stated that petitioner's salary for calendar year 1981 would remain at $ 60,000 a year, and confirmed that petitioner and Saab-Totem had agreed that petitioner's bonus for 1981 would be based on Saab-Totem's sales and net income. On February 13, 1981, petitioner wrote a memorandum to John Ely, the secretary of Saab-Totem. Attached to the memorandum was the first draft and a revised version of a letter agreement, and a copy of the letter that Risberg had sent to petitioner on February 21, 1980. In the memorandum, petitioner asked Ely to review the revised version of the letter agreement and, if it met with Ely's approval, to have Goeran Olofsson, a vice-president of Saab-Totem, sign it. The revised version of the letter agreement was dated December 22, 1980, and recited that petitioner had requested that Saab-Totem enter into an employment agreement with Worthley Enterprises, Inc. ("Worthley Enterprises"), a corporation owned by petitioner, to replace the agreement *291 set forth in Risberg's letter to petitioner dated February 21, 1980. The revised letter agreement stated that "Saab-Totem is willing to consider [the agreement set forth in the letter dated February 21, 1980] as amended as of January 1, 1981 in accordance with [petitioner's] request on the additional condition that the Agreement with Worthley Enterprises, Inc. may be cancelled without notice or penalty by Saab-Totem for any reason whatsoever." The record does not indicate that the revised agreement was ever executed on behalf of Saab-Totem. On March 6, 1981, Ely drafted a letter to petitioner. [4] The letter stated that there were problems with petitioner's "employment by Worthley Enterprises, Inc." relating to petitioner's continued entitlement to receive benefits as an employee of Saab-Totem. It stated that "if these areas can be cleared up, I have no objection to handling this matter in the fashion you suggest." Ely attached a letter for petitioner's signature to the letter. The first paragraph of the letter for petitioner's signature stated as follows: This is to acknowledge that effective as of January 1, 1981 I have terminated my employment with Saab-Totem, Inc. and *292 have become employed by Worthley Enterprises, Inc. Services I render after January 1, 1981 for Saab-Totem, Inc., if any, will be as an employee of Worthley Enterprises, Inc. providing services pursuant to Saab-Totem Inc.'s letter agreement of December 22, 1980 with that corporation. I intend and understand that after January 1, 1981 I will receive compensation for any personal services rendered to Saab-Totem Inc. solely from Worthley Enterprises, Inc. and that I will receive no compensation from Saab-Totem Inc. and will no longer have the rights of or be eligible for any of the benefits (including without limitation, insurance, medical or retirement benefits) now or hereafter provided for employees of Saab-Totem Inc. The record contains no evidence that the letter was ever signed by petitioner. On October 23, 1981, petitioner wrote to Risberg that "I find I cannot renew my contract with Saab-Scania when it expires on March 31, 1982." (Emphasis added.) On February 18, 1982, Risberg wrote to petitioner and informed him that his bonus for 1981 was $ 14,000. On April 14, 1982, petitioner wrote to *293 Saab-Totem in the capacity of president of Worthley Enterprises to "confirm that Worthley Enterprises * * * has since January 1, 1981 been performing executive services to Saab-Totem, Inc. ("Saab-Totem") in the capacity of an independent contractor." The board of directors of Saab-Totem met on May 25, 1982. During that meeting, Risberg noted that petitioner had requested that he not be reelected president because he did not want to work full-time and wanted to pursue personal interests. Risberg noted that petitioner "had fulfilled his two-year commitment in March" of 1982 and had stayed on at Risberg's request until a new president could be found. On April 1, 1983, Saab Systems, Inc. [5] sent a Form 1099 to respondent reporting that it had paid petitioner $ 42,751 of compensation in 1982. On May 18, 1983, it mailed respondent a 1099 labeled "CORRECTED RETURN" on which it indicated that the 1099 reporting payments to Charles M. Worthley was incorrect and reported that it had paid $ 42,160 to Worthley Enterprises. On their joint Federal income tax return for 1982, petitioners reported no wages or income *294 from Saab-Totem or Saab Systems, Inc. Respondent audited that return and determined that petitioners had failed to report $ 42,751 of compensation from Saab Systems, Inc. Respondent determined further that petitioners were negligent in failing to report the compensation and were therefore subject to additions to tax provided by sections 6653(a)(1) and 6653(a)(2). OPINION Deficiency
Petitioners argue that Worthley Enterprises, rather than they themselves, is properly taxable on the compensation at issue. As respondent determined that the compensation was taxable to petitioners, petitioners bear the burden of proof. ; Rule 142(a). The principle that income is taxed to the person who earns it is basic to our system of income taxation. ; . However, as we noted in , affd. without published opinion , cert. denied , in cases involving closely held *295 or one-man personal services corporations, a tension exists between the principle that income is taxed to the person who earns it and the principle that corporations are separate and distinct taxpayers from their owners. See . In deciding whether an individual rather than his corporation is taxable with respect to income earned through his performance of personal services, we have held that the relevant inquiry is which of the two parties controls the earning of the income. . In Johnson v. Commissioner, we recognized that two elements must be present before a corporation, rather than its service-performer employee, may be considered the controller of income. We articulated those two elements as follows: First, the service-performer employee must be just that -- an employee of the corporation whom the corporation has the right to direct or control in some meaningful sense. Second, there must exist between the corporation and the person or entity using the services a contract or similar indicium recognizing the corporation's controlling position. *296 [; citations omitted.] In this case, petitioner has failed to prove either of the two elements. First, there is no evidence, such as a contract or employment agreement between petitioner and Worthley Enterprises, that Worthley Enterprises had any right to control the work that petitioner performed for Saab-Totem. See , affd. per curiam . Cf. . Second even assuming, arguendo, that Worthley Enterprises had a right to control the work that petitioner performed for Saab-Totem, the record contains no evidence that Saab-Totem recognized that Worthley Enterprises controlled petitioner. In fact, the letter that Risberg sent to petitioner on February 21, 1980 recites that Saab-Totem was hiring petitioner personally for two years beginning March 31, 1980. The letter made no mention of Worthley Enterprises. When petitioner indicated his agreement with the terms of the letter by signing it on March 10, 1980, there is no indication that he signed it in other *297 than his individual capacity. Although the evidence indicates that petitioner subsequently attempted to have Saab-Totem contract with Worthley Enterprises for his services, there is no evidence that Saab-Totem did so. The letter to petitioner from John Ely dated February 13, 1981, suggests that Saab-Totem had problems with petitioner's proposal, and was unwilling to agree to it unless certain matters could be resolved. There is no evidence that matters were resolved. We consider it significant that none of the correspondence subsequently sent by Saab-Totem regarding the work performed by petitioner was either addressed to or referred to Worthley Enterprises. The minutes of the Saab-Totem's May 25, 1982 board of directors' meeting refer to petitioner as having "fulfilled his two year commitment [to Saab-Totem] in March" (emphasis added), and make no reference to Worthley Enterprises. Saab Systems, Inc. did report on a corrected 1099 that it had paid the compensation at issue to Worthley Enterprises rather than petitioner. That fact alone does not, however, establish that Saab-Totem recognized by a contract or similar indicium that Worthley Enterprises controlled petitioner. *298 It may merely indicate that Saab-Totem was to report that it paid the compensation to Worthley Enterprises at petitioner's request. In these circumstances, we conclude that petitioners have failed to prove that Worthley Enterprises, rather than petitioner, controlled the income earned from Saab-Totem. We accordingly hold that petitioners have failed to prove that respondent erred in determining that the compensation at issue is properly taxable to them. [6]
Addition to Tax
The next issue for decision is whether petitioners are liable for the additions to tax for negligence determined by respondent. Petitioners bear the burden of proving that the additions determined by respondent in his notice of deficiency do not apply. , affg per curiam , cert. denied ; . Negligence under section 6653(a) is defined as lack of due care or failure to do that a reasonable and *299 ordinarily prudent person would do under the circumstances. . Based on the record before us, including the fact that the record contains no evidence that Worthley Enterprises controlled the earning of the compensation at issue, we are unable to conclude that petitioners were not negligent in failing to report the compensation at issue. We accordingly hold that petitioners have failed to prove that they are not subject to the addition to tax for negligence. We hold further that they have failed to prove that the entire underpayment for 1982 is not attributable to negligence for purposes of the section 6653(a)(2) addition. To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. By order of the Chief Judge, this case was reassigned to Judge Jules G. Korner III for opinion and decision. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as in effect in the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise noted. ↩
*. 50 percent of the interest attributable to an underpayment of $ 16,021.80. ↩
3. After this case was submitted by the parties for decision, petitioners attempted to supplement the original stipulation. Respondent did not, however, agree to the supplemental stipulation. We accordingly did not consider the supplemental stipulation and the documents attached thereto in reaching our decision herein. ↩
4. The record does not indicate whether the letter was ever mailed.↩
5. Saab-Totem apparently changed its name to Saab Systems, Inc. ↩
6. Petitioners do not argue that respondent improperly determined the amount↩ of such compensation.